## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| WENDY DANIELS, <br><br> *Plaintiff,* <br><br> v. <br><br> ALDRIDGE PITE HAAN, LLP, <br><br> *Defendant.* | CIVIL ACTION NO. <br> 5:20-cv-00089-TES |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

"No harm. No foul."

For years, players in pickup basketball games all over playgrounds, church gyms, and driveway courts have followed this simple phrase. Although one team may have technically violated a rule, the other team wasn't hurt or put at a disadvantage, so the refs (or more likely, the players themselves) just let it go as there was no need to slow down the game with silly, hypertechnical, ticky-tack fouls. In a way, courts have the same rule—if you aren't really hurt, then you, quite literally, cannot make a federal case out of every technical violation of a statute. To get in the courthouse, you have to first show that you were specifically hurt in a tangible manner. If you can't, then the "no harm, no foul" rule says you don't have a suit at all.

Just last week, the Eleventh Circuit Court of Appeals formally accepted and applied the concept of "no harm, no foul" to Fair Debt Collection Practices Act cases

like this one. *Trichell v. Midland Credit Mgmt., Inc.*, --- F.3d ----, 2020 WL 3634917 (11th Cir. July 6, 2020). Relying on *Trichell*, the Court finds that because Plaintiff hasn't alleged a true injury in fact, then it doesn't have jurisdiction to hear her case, and it is therefore, **DISMISSED without prejudice**.

## I.   <u>FACTUAL SUMMARY</u>

Ms. Daniels filed her Complaint on March 3, 2020, alleging that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") "by use of false, deceptive, and misleading means, by producing a false certificate of service for Defendant's Notice of Intent to Introduce Documents" ("the Notice") and alleging that the shortcomings of the Notice "indicate a lack of meaningful attorney involvement." [Doc. 1 at p. 1].

To put those allegations into context, we need to start at the beginning. On January 4, 2019, Defendant filed suit against Ms. Daniels in the Houston County Magistrate Court to collect a debt allegedly owed. [Doc. 1 at ¶ 9]. As that case proceeded in its usually and customary course, Defendant sent Ms. Daniels' attorney a "Notice to Introduce Documentary Evidence." [*Id.* at ¶ 15]. However, Defendant's Notice said it included the particular documents to be later introduced into evidence,

but Defendant failed to attach any documents whatsoever.[1] And, Defendant's certificate of service said the documents were mailed on March 5, 2019, but apparently, for some reason, they weren't actually mailed until March 25, some 20 days later.[2] [*Id.* at ¶¶ 15–17].

After receiving the Notice, Ms. Daniels' attorneys (apparently) scoured the Notice and its accompanying certificate of service for possible FDCPA violations. Having found what she considered two such violations, Ms. Daniels filed suit, alleging that Defendant engaged in the "use of false, deceptive, and misleading means," going so far as to accuse Defendant of filing a false affidavit because its certificate of service represented to the state court that it mailed the Notice on (or near) the signed date when it did not actually mail the Notice until 20 days later. *See generally* [*id.*].

Ms. Daniels also contends that the Notice demonstrates a lack of "meaningful attorney involvement." [*Id.* at p. 1]. She bases this claim on the fact that the Notice contained a statement that a courtesy copy of discovery documents was attached to the Notice; however, the documents were not, in fact, attached to the Notice sent to

---

[1] Plaintiff did not attach the Notice to her Complaint and Defendant did not attach it to its Motion to Dismiss. However, Defendant argues that it sent the disputed Notice to Plaintiff in accordance with O.C.G.A. § 24-8-803(6) (business records exception to hearsay) and O.C.G.A. § 24-9-902(11) (method of authentication). The Court has reviewed those Code sections and notes that § 24-9-902(11) does not require a party to serve a courtesy copy of the actual documents it intends to produce at trial. Rather, it only requires the party intending to introduce the evidence to make the copies of the documents available to the other side.

[2] Neither of these documents were attached as exhibits to the Complaint either.

Ms. Daniels. [*Id.*]. She reasons that, if there were meaningful attorney involvement in the case, this mistake/miscommunication would not have occurred. [*Id.*].

Ms. Daniels' Complaint contains only generic references to harm and expenses suffered because of these alleged violations. She did not provide the Court any details regarding what effect, if any, these issues with the Notice have had on her state court case, nor did she provide any details regarding the nature and amount of the "costs" she has suffered.

So, the real question for the Court is whether Ms. Daniels has stated a particularized injury-in-fact sufficient to give her standing to complain or whether this is another FDCPA case of "no harm, no foul." The Court easily concludes it is the latter.

## II.    STANDING

"Under settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it." *Trichell,* 2020 WL 3634917, at *3 (11th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Thus, at the motion-to-dismiss stage, [a plaintiff bears] the burden of alleging facts that plausibly establish[es] . . . standing." *Id.* at *3 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–84 (2009)). "If the plaintiff fails to meet [her] burden, this court lacks the power to create jurisdiction by embellishing a deficient

allegation of injury." *Elend v. Basham*, 471 F.3d 1199, 1206 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000)).

### A.   <u>Injury in Fact</u>

A showing of injury-in-fact is the "foremost" requirement to demonstrate standing. *Trichell*, 2020 WL 3634917, at *3 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

> An injury in fact consists of "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." A "concrete" injury must be "de facto"—that is, it must be "real, and not abstract." A "particularized" injury "must affect the plaintiff in a personal and individual way." Each subsidiary element of injury—a legally protected interest, concreteness, particularization, and imminence—must be satisfied. [Such] cases turn most centrally on the requirement of concreteness.
>
> As a general matter, tangible injuries qualify as concrete. . . . Intangible injuries sometimes qualify as concrete, but not always. In particular, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Rather, "Article III standing requires a concrete injury even in the context of a statutory violation."

*Id.* at *3 (internal citations omitted).

### 1.   <u>Concreteness</u>

"To determine whether an intangible injury is sufficiently concrete, [a court] must look to both history and the judgment of Congress." *Id.* As to history, the Court should consider "whether the alleged intangible injury bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English

or American courts.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) *as revised* (May 24, 2016)). The Eleventh Circuit Court of Appeals has established that a FDCPA claim arising from a procedural infraction is not actionable where it is "difficult to imagine" how such an infraction "could work any concrete harm that would be actionable at common law." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1150).

For instance, in *Trichell,* the plaintiffs filed suit for intangible harm caused by allegedly fraudulent or misleading representations that violated the FDCPA. 2020 WL 3634917, at *4. The Eleventh Circuit Court of Appeals held that the "closest historical comparison is to" tort law causes of action for fraudulent or negligent misrepresentation, but it noted that such claims require showing of reliance and actual damages. *Id.* Thus, the plaintiffs' case lacked standing because, while they sought "to recover for representations that they contend[ed] were misleading or unfair," they did so "without [even proving] that they relied on the representations, much less that the reliance caused them any damages." *Id.* Therefore, "[b]y jettisoning the bedrock elements of reliance and damages, the plaintiffs assert[ed] claims with no relationship to harms traditionally remediable in American or English courts. *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009)).

### 2.     The Judgment of Congress

As to the issue of Congress's judgment when assessing injury in fact, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, [de facto] injuries that

were previously inadequate in law.'" *Trichell*, 2020 WL 3634917, at *4 (quoting *Lujon*, 504 U.S. at 578) (italics omitted). Furthermore, Congress is "'well positioned' to make its own judgment about which harms are sufficiently concrete, particularized, and imminent to constitute injuries in fact." *Trichell*, 2020 WL 3634917, at *4 (quoting *Spokeo*, 136 S. Ct. at 1549). The Supreme Court has established that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at *5 (citations omitted).

Thus, "[t]he existence of a 'cause of action does not affect the Article III standing analysis,'" and "Article III standing requires a concrete injury even in the context of a statutory violation," *Trichell*, 2020 WL 3634917, at *5 (first quoting *Thole v. U.S. Bank N.A.*, --- U.S. ----, 140 S. Ct. 1615, 1620 (2020) and then quoting *Spokeo*, 136 S. Ct. at 1549). Therefore, Congress' judgment may *inform* the assessment of whether a plaintiff's injury is concrete, but its judgment cannot *control* the assessment. *Trichell*, 2020 WL 3634917, at *5 n.2 ("We cannot treat an injury as "concrete" for Article III purposes based only on Congress' say-so."). Ultimately, the Eleventh Circuit Court of Appeals "rejected the anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury." *Id.* (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)).

B.     **Discussion**

The Court finds that the recent *Trichell* opinion clearly controls here. As the Eleventh Circuit Court of Appeals clearly noted, "[n]othing in the FDCPA suggests that *every* violation of [its] provisions . . ." creates an injury for Article III standing. *Trichell*, 2020 WL 3634917, at *7 (quoting *Frank v. Autovest, LLC,* 961 F.3d 1185 (D.C. Cir. 2020)). Therefore, even accepting Ms. Daniels' allegations that Defendant misrepresented the service date on the certificate as true when it wasn't, such a minor and technical infraction of the FDCPA is simply not sufficient to convey standing before the Court because she really didn't suffer any harm by it.

Again, Ms. Daniels provided the Court with no details whatsoever regarding the actual harm—or even what *risk* of harm—if *any,* she suffered because of the 20-day inconsistency in the date the Notice was filed compared to the date it was mailed to her. If (and that's a big if) she was truly harmed by a mailing date, then she was under an obligation to tell the Court exactly how that error hurt her. Same for the Notice she so hotly disputes. She has not given details regarding any harm or risk of harm that was caused by the error regarding *optional* enclosures to the Notice. *See* n.1, *supra*. And, in this case, she would be hard pressed to do so. Surely, if she were truly harmed by not providing courtesy copies, she could have brought such a hearty grievance to the attention of the presiding state-court judge for her to swiftly and harshly handle. But she didn't.

And the real reason she didn't is because she wasn't harmed at all. As the *Trichell* opinion illustrates, the FDCPA is a shield to protect debtors from unethical and illegal debt collectors; it is not a sword to be wielded to force defendants to pay plaintiffs who have not suffered. Because the Eleventh Circuit does not recognize an "anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury," Ms. Daniels' amorphous and generic claims of harm are precisely the kind of "bare allegation of a statutory violation" that fail to meet the concreteness requirement of injury in fact. *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016); *Trichell*, 2020 WL 3634917, at *5 n.2.

Accordingly, the Court finds that Ms. Daniels lacks standing[3] to bring this case and **DISMISSES** it for want of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

### III.   <u>CONCLUSION</u>

Accordingly, for the reasons discussed herein, the Court **GRANTS** Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and **DISMISSES** this case **without prejudice** for lack of subject-matter jurisdiction.

**SO ORDERED** this 8th day of July, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[3] Since Ms. Daniels cannot satisfy the injury-in-fact element of standing, the Court need not examine the remaining elements of standing: causation, redressability, or any prudential limitations. *See generally Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006). Moreover, as the Court has determined it lacks subject-matter jurisdiction to hear this case, it cannot decide Defendant's remaining motion to dismiss based on Rule 12(b)(6).